No. 22-13215-AA

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
——————————

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

MIKEL MIMS,
*Defendant/Appellant.*

——————————

On Appeal from the United States District Court
for the Southern District of Florida
——————————

INITIAL BRIEF OF THE APPELLANT
MIKEL MIMS
——————————

MICHAEL CARUSO
Federal Public Defender
TA'RONCE STOWES
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1500
Miami, Florida 33130
Telephone No. (305) 530-7000

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL CASE)

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

## United States of America v. Mikel Mims
## Case No. 22-13215-AA

Appellant Mikel Mims files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Altonaga, The Honorable Cecilia M.

Becker, Abigail Emily

Caruso, Michael

Cooke, The Honorable Marcia G.

Davidson, H. Ron

Fajardo Orshan, Ariana

Garber, The Honorable Barry L.

Ghomeshi, Sogol

Gonzalez, Juan Antonio

Goodman, The Honorable Jonathan

Greenberg, Gerald

Habbershaw, Simon

Lapointe, Markenzy

Mims, Mikel

Otazo-Reyes, The Honorable Alicia M.

Phillips-Williams, Bonnie

Richards, George

Rosado, Vivian

Rubio, Lisa Tobin

Smith, Chapman

Stowes, Ta'Ronce

United States of America

Vereen, Roderick Darrell

Walkins, Arimentha R.

*/s/ Ta'Ronce Stowes*
**TA'RONCE STOWES**

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. Because this appeal presents a question of first impression in this Circuit, it is respectfully submitted that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision-making process.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ................................................................ C-1

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF CITATIONS ..........................................................................iv

STATEMENT OF SUBJECT MATTER AND APPELLATE

JURISDICTION ........................................................................................1

STATEMENT OF THE ISSUE ................................................................2

STATEMENT OF THE CASE ..................................................................3

    Course of Proceedings and Disposition in the District Court .........3

    Statement of Facts .....................................................................5

    Standards of Review....................................................................10

SUMMARY OF THE ARGUMENT .........................................................11

ARGUMENT AND CITATIONS OF AUTHORITY ...............................14

I.    THE COMPLIANCE ORDER MUST BE VACATED
BECAUSE THE DISTRICT COURT LACKED
JURISDICTION TO ISSUE ANY SUBSTANTIVE RULING
IN MS. MIMS'S CRIMINAL CASE AFTER HER SENTENCE
OF PROBATION TERMINATED..................................................14

A.   The district court lost all power over Ms. Mims's criminal case once her term of probation expired and the case itself concluded ............................................................ 15

B.   Title 18 U.S.C. § 3613(b) did not authorize the district court to reopen Ms. Mims's criminal case or issue substantive orders in it ........................................................ 18

   1.   18 U.S.C. § 3613(b) is not a jurisdictional statute ...... 20

   2.   18 U.S.C. § 3613 requires the government to pursue independent civil proceedings to invoke the statute ........................................................................ 22

   3.   The government and the district court failed to comply with 18 U.S.C. § 3613's procedural requirements ................................................................ 28

CONCLUSION ........................................................................ 31

CERTIFICATE OF COMPLIANCE ........................................ 32

CERTIFICATE OF SERVICE ................................................ 33

# TABLE OF CITATIONS

## Cases

*Alexander v. Sandoval,*

   532 U.S. 275 (2001)..................................................................27

*Arbaugh v. Y & H Corp.,*

   546 U.S. 500 (2006)..................................................................20

*Artistic Ent., Inc. v. City of Warner Robins,*

   331 F.3d 1196 (11th Cir. 2003)................................................23

*Botany Mills v. United States,*

   278 U.S. 282 (1929)..................................................................27

*Bozel v. United States,*

   139 F.2d 153 (6th Cir. 1943)...................................................16

*Carlisle v. United States,*

   517 U.S. 416 (1996)..................................................................18

*CBS Inc. v. PrimeTime 24 Joint Venture,*

   245 F.3d 1217 (11th Cir. 2001)................................................26

*Dillon v. United States,*

   560 U.S. 817 (2010)..................................................................16

*Eaton v. United States*,

    178 F.3d 902 (7th Cir. 1999)..................................................................18

*Ex parte Lange*,

    85 U.S. 163 (1873)........................................................................15, 16

*Goldman v. First Fed. Sav. & Loan Ass'n of Wilmette*,

    518 F.2d 1247 (7th Cir. 1975)..............................................................27

*Henderson ex rel. Henderson v. Shinseki*,

    562 U.S. 428 (2011)..............................................................................20

*Home Depot U. S. A., Inc. v. Jackson*,

    139 S. Ct. 1743 (2019).........................................................................14

*In re Trusted Net Holdings, LLC*,

    550 F.3d 1035 (11th Cir. 2008).............................................................20

*In re Wild*,

    994 F.3d 1244 (11th Cir. 2021).............................................................27

*Kokkonen v. Guardian Life Ins. Co. of Am.*,

    511 U.S. 375 (1994).......................................................................14, 19

*Kucana v. Holder*,

    558 U.S. 233 (2010)..............................................................................20

*Landgraf v. USI Film Prods.*,

   511 U.S. 244 (1994)...............................................................................21

*National R.R. Passenger Corp. v. National Ass'n of R.R.*

   *Passengers*,

   414 U.S. 453 (1974)...............................................................................27

*Schultz v. United States*,

   594 F.3d 1120 (9th Cir. 2010)..............................................................27

*Securities Inv. Protection Corp. v. Barbour*,

   421 U.S. 412 (1975)...............................................................................27

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,

   444 U.S. 11 (1979)................................................................................27

*Trump v. United States*,

   54 F.4th 689 (11th Cir. 2022) .............................................................14

*U.S. Commodity Futures Trading Comm'n v. Escobio*,

   946 F.3d 1242 (11th Cir. 2020)..............................................24, 25, 28

*United States v. Amodeo*,

   916 F.3d 967 (11th Cir. 2019)........................................................14, 22

*United States v. Asakevich,*

    810 F.3d 418 (6th Cir. 2016) ................................................................ 18

*United States v. Bryant,*

    996 F.3d 1243 (11th Cir. 2021) ............................................................ 26

*United States v. Cotton,*

    535 U.S. 625 (2002) ............................................................................ 20

*United States v. Edwards,*

    997 F.3d 1115 (11th Cir. 2012) ............................................................ 10

*United States v. Goode,*

    342 F.3d 741 (7th Cir. 2003) ............................................................... 18

*United States v. Ibrahim,*

    522 F.3d 1003 (9th Cir. 2008) ............................................................. 18

*United States v. Mayer,*

    235 U.S. 55 (1914) .............................................................................. 15

*United States v. Mays,*

    430 F.3d 963 (9th Cir. 2005) ......................................................... 23, 26

*United States v. Murray,*

    275 U.S. 347 (1928) ....................................................................... 15, 16

*United States v. Oliver*,

    148 F.3d 1274 (11th Cir. 1998) ............................................................ 10

*United States v. Peters*,

    783 F.3d 1361 (11th Cir. 2015) ............................................................ 10

*United States v. Phillips*,

    303 F.3d 548 (5th Cir. 2002) ................................................................ 23

*United States v. Pocklington*,

    792 F.3d 1036 (9th Cir. 2015) ................................................. 20, 21, 22

*United States v. Potes Ramirez*,

    260 F.3d 1310 (11th Cir. 2001) ............................................................ 18

*United States v. Rojas*,

    718 F.3d 1317 (11th Cir. 2013) ............................................................ 10

*United States v. Smith*,

    30 F.4th 1334 (11th Cir. 2022) ................................................. 13, 29, 30

*United States v. Smith*,

    331 U.S. 469 (1947) ............................................................................. 15

*United States v. Spaulding*,

    802 F.3d 1110 (10th Cir. 2015) ............................................................ 15

*United States v. Walden*,

    464 F.2d 1015 (4th Cir. 1972) ................................................................21

*Zerbst v. Kidwell*,

    304 U.S. 359 (1938) ...............................................................................16

**Statutes**

18 U.S.C. § 371 .............................................................................................5

18 U.S.C. § 1343 ...........................................................................................5

18 U.S.C. § 3231 ..........................................................................1, 16, 17, 21

18 U.S.C. § 3564(a) ....................................................................................17

18 U.S.C. § 3565(c) .....................................................................................21

18 U.S.C. § 3613 ................................................................................*passim*

18 U.S.C. § 3664 ...................................................................................16, 27

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 3001 ..............................................................................23, 24, 25

28 U.S.C. § 3002 ..............................................................................23, 24, 25

28 U.S.C. § 3003(f) .....................................................................................25

28 U.S.C. § 3101(a) ................................................................................24, 25

28 U.S.C. § 3202 .........................................................................................25

28 U.S.C. § 3203 .........................................................................................28

28 U.S.C. § 3204 ...................................................................................28

28 U.S.C. § 3205 ...................................................................................28

28 U.S.C. § 3306(a) ..............................................................................25

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had jurisdiction over Appellant's underlying criminal offense pursuant to 18 U.S.C. § 3231. However, Appellant maintains herein that the district court did not have jurisdiction to enter in this case the final order purporting to enforce a previously-imposed restitution order, because the court's jurisdiction over the case terminated, at the latest, when Appellant completed the term of probation imposed for her underlying criminal offense.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which confers jurisdiction on the courts of appeals from final decisions of the district courts. On August 18, 2022, the district court entered the order directing that Appellant comply with a restitution payment schedule and disclose personal financial information, which disposes of all claims between the parties to this cause. (DE 114).

The notice of appeal was filed on September 22, 2022. (DE 116). On November 9, 2022, the district court entered an order extending the time to file a notice of appeal pursuant to Federal Rule of Appellate Procedure 4(b)(4), thus rendering the notice of appeal timely. (DE 130).

## STATEMENT OF THE ISSUE

Whether the district court lacked jurisdiction to impose an order purporting to enforce a previously-imposed restitution order and requiring the payment of arrears, within Appellant's criminal case and without the government's institution of a separate civil proceeding, years after Appellant completed her term of probation.

## STATEMENT OF THE CASE

The appellant, who was the defendant in the district court, will be referred to by name. The appellee, the United States of America, will be referred to as the government or Appellee. The record will be noted by reference to the document and page numbers listed on the header generated by the district court's electronic filing system, as prescribed by this Court's rules. *See* 11th Cir. R. 28-5.

Ms. Mims is not incarcerated.

### Course of Proceedings and Disposition in the District Court

In 2014, Ms. Mims was indicted in the Southern District of Florida on five wire fraud-related charges. (DE 3; DE 42). The district court adjudicated Ms. Mims guilty of one count of conspiracy to commit wire fraud, in accordance with a written plea agreement. (DE 42; DE 65). She was sentenced to three years' probation and ordered to pay monthly restitution. (DE 65). Ms. Mims completed her term of probation in 2017.

In 2021, four years after the probation term ended, the government filed two motions, within Ms. Mims's underlying criminal case, claiming that she had not paid restitution since completing probation. (DE 102; DE 110). The second motion requested, among other things, that Ms.

3

Mims be directed to comply with the restitution payment schedule ordered in the Amended Judgment issued in 2014. (DE 110). The district court judge who was originally assigned to the case expressed reservations about the motion, and found that the court lacked jurisdiction to act in the criminal case. A different district court judge, however, ultimately issued an order enforcing the restitution order. (DE 114). This appeal follows.

## STATEMENT OF FACTS

### Ms. Mims's Prior Criminal Case

On April 3, 2014, a federal grand jury in the Southern District of Florida returned an indictment charging Ms. Mims with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371 (Count 1); and four counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 2 and 4 through 6). (DE 3:1-9).[1] The charges stem from Ms. Mims's involvement in a scheme spanning from December 2008 to March 2013, which was designed to generate proceeds from sales of fraudulently manufactured tickets to a tennis tournament held in Miami-Dade County. (DE 42:14-15).

Ms. Mims pled guilty to Count 1, conspiracy to commit wire fraud. (DE 42). The district court entered an Amended Judgment, *nunc pro tunc* to July 30, 2014, adjudicating Ms. Mims guilty of that offense, sentencing her to three years' probation, and dismissing the remaining counts. (DE 65:1-2). The Amended Judgment ordered that she pay $255,620 in

---

[1] The indictment also charged Simon Habbershaw with five wire fraud-related counts. (DE 3:1-9). He pled guilty to one count of conspiracy to commit wire fraud. The district court sentenced him to three years' probation for the offense and ordered that he pay over $100,000 in restitution. (DE 33; DE 50:1-5).

restitution, at a rate of ten percent of her monthly gross earnings (the "Restitution Order"). (DE 65:4).

Ms. Mims completed probation on or about July 30, 2017. To date, at least $58,232.93 has been credited towards the restitution balance. (DE 110:1).

### The Enforcement Proceedings in the Criminal Case

In September 2021—four years after Ms. Mims's probation term ended—the government filed within her prior criminal case a motion (i) claiming she had not paid restitution since 2017, and (ii) requesting a hearing to determine why. (DE 102). A hearing was held, via Zoom video conference, on October 21, 2021. Because Ms. Mims received no notice of it, she was not present. (DE 126:2,5).

At the hearing, the Honorable Marcia G. Cooke—the district judge assigned to the prior criminal case—questioned the purpose of the government's motion. (DE 126:2,4). The court doubted that it had jurisdiction to act within the criminal case given that Ms. Mims's probation term ended years before then. (DE 126:2-4). The court also questioned why she "never had one of these before in 17 years," in the "hundreds of cases where people owe millions of dollars." (DE 126:4-6).

6

Judge Cooke declined to take further action without Ms. Mims being notified and given an opportunity to be heard, and until the court could consult with the probation office on the matter. (DE 126:2,5).

A status conference, again held via Zoom video conference, followed on November 3, 2021. (DE 127). Judge Cooke, both parties, and a probation officer attended. Following argument from court-appointed defense counsel, the court informed the parties that it discussed the matter with the chief probation officer, who "seemed to be unaware of the frequency of these matters." (DE 127:5). The court also consulted with the probation officer in attendance, who explained that once criminal defendants "have completed supervision we no longer have contact with them, and it becomes a civil matter for the [Financial Litigation Unit] to monitor, at which point I no longer have any jurisdiction to violate any of her supervision as it has terminated." (DE 127:6). The government then presented argument, after which the court "f[ound] at this time I have no jurisdiction to act." (DE 127:11-12). The court did, however, welcome a motion from the government explaining whatever law it believed provided grounds for exercising jurisdiction under the prior criminal case, and a response from Ms. Mims. (DE 127:13-14).

On November 5, 2021, the government filed a Motion for an Order Directing the Defendant to Comply with the Payment Schedule Imposed by this Court (the "Motion to Comply"). (DE 110). Ms. Mims responded on November 18, 2021, and a reply in support of the motion was filed five days later. (DE 111; DE 112). On August 18, 2022, the district court issued in the criminal case an Order granting the Motion to Comply (the "Compliance Order"). (DE 114).

The Compliance Order was signed by the Honorable Cecilia M. Altonaga, the Chief Judge of the Southern District of Florida (DE 114:6)—not Judge Cooke, who in the first instance held that the court lacked criminal jurisdiction and was the only judge to hear oral argument from the parties. According to the Order, per Chief Judge Altonaga, the court agreed with the government's argument "that jurisdiction exists because the criminal restitution judgment has not expired," under subsection (b) of 18 U.S.C. § 3613. (DE 114:2-3) (citation omitted). The Compliance Order directs that Ms. Mims "must comply with the payment schedule listed in the Amended Judgment." (DE 114:6). More specifically, Ms. Mims "must renew" her restitution payments and "must make up for

the past five years" of nonpayment. *Id.* The Order also directs Ms. Mims to submit a completed Financial Statement of Debtor form. *Id.*

## STANDARDS OF REVIEW

The Compliance Order frames the dispute below as one concerning "the [District] Court's jurisdiction." (DE 114:2). This Court "review[s] questions regarding jurisdiction of district courts and questions of statutory interpretation de novo." *United States v. Edwards*, 997 F.3d 1115, 1117 n.1 (11th Cir. 2012) (first citing *United States v. Oliver*, 148 F.3d 1274, 1275 (11th Cir. 1998); then citing *United States v. Rojas*, 718 F.3d 1317, 1319 (11th Cir. 2013)). This includes the requirements of the Federal Debt Collection Procedures Act of 1990. *United States v. Peters*, 783 F.3d 1361, 1363 (11th Cir. 2015).

## SUMMARY OF THE ARGUMENT

The district court lacked jurisdiction to enter the Compliance Order, which purports to direct that Ms. Mims comply with a restitution payment schedule.

Generally speaking, district courts lose jurisdiction over criminal cases upon entry of the final judgment. The district court's jurisdiction over Ms. Mims's criminal case terminated in 2014 when the Amended Judgment was issued. And, any remaining authority the court had to modify or enforce the terms of Ms. Mims's probation expired once Ms. Mims completed probation in 2017. The criminal case was thus not an appropriate forum for the government's motion. The district court lacked authority to issue substantive rulings in the criminal case without an independent legal basis, and none existed.

The district court erroneously determined that subsection (b) of 18 U.S.C. § 3613 authorized it to enforce the restitution payment schedule through Ms. Mims's criminal case. That provision is not a jurisdictional statute. It prescribes only a right of the government—enforcement of judgments imposing fines and ordering restitution—and the manner of

enforcement. It contains no language that clearly declares the power of district courts with respect to enforcement proceedings.

To the extent that section 3613 may be deemed jurisdictional, the government failed to properly invoke the court's jurisdiction under the statute in this case. A plain reading of its text reflects Congress's intent to authorize enforcement of criminal restitution orders only through independent civil proceedings. The government never instituted such a proceeding against Ms. Mims. Further, the government's request below—that Ms. Mims generally be directed to comply with the restitution payment schedule under the Amended Judgment—is not a form of relief that falls within the limited group of remedies contemplated by section 3613. But even assuming the government did request one of the contemplated remedies, it failed to satisfy section 3613's procedural requirements for obtaining the particular remedy. Likewise, the judge that issued the Compliance Order failed to ensure the district court complied with its own procedural obligations, such as conducting a hearing and taking evidence concerning Ms. Mims's dependents and other statutorily-enumerated factors. The failure to do so constitutes a

12

due process violation warranting reversal, as this Court recognized in *United States v. Smith*, 30 F.4th 1334 (11th Cir. 2022).

For these reasons, the Compliance Order must be vacated and the case should be remanded for the district court to dismiss the proceedings below for lack of jurisdiction.

**ARGUMENT AND CITATIONS OF AUTHORITY**

**THE COMPLIANCE ORDER MUST BE VACATED BECAUSE THE DISTRICT COURT LACKED JURISDICTION TO ISSUE ANY SUBSTANTIVE RULING IN MS. MIMS'S CRIMINAL CASE AFTER HER SENTENCE OF PROBATION TERMINATED.**

"Without jurisdiction, [a federal] court cannot proceed at all in any cause." *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) (citation omitted) (cleaned up). "'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'" *Trump v. United States*, 54 F.4th 689, 694 (11th Cir. 2022) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Since "lower federal-court jurisdiction is further limited to those subjects encompassed within a statutory grant of jurisdiction . . . the district courts may not exercise jurisdiction absent a statutory basis." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (citation omitted).

14

**A. The district court lost all power over Ms. Mims's criminal case once her term of probation expired and the case itself concluded.**

The exercise of criminal jurisdiction has always had its limits. At common law, federal courts did not "have continuing jurisdiction over criminal cases." *United States v. Spaulding*, 802 F.3d 1110, 1125 n.21 (10th Cir. 2015) (citing *United States v. Smith*, 331 U.S. 469, 473 (1947)). "Generally speaking, the power of a court over its judgments at common law expired with the term of Court." *Smith*, 331 U.S. at 473 (citing *United States v. Mayer*, 235 U.S. 55, 67-69 (1914)). And "[t]he beginning of the service of the sentence in a criminal case end[ed] the power of the court even in the same term to change it." *United States v. Murray*, 275 U.S. 347, 358 (1928) (citing *Ex parte Lange*, 85 U.S. 163 (1873)).

Circuits applying opinions like *Murray* later adopted similar principles—but in broader terms. In *Hynes v. United States*, for instance, the Seventh Circuit held that "[i]n criminal cases, where a sentence is valid and the defendant has commenced the service of the sentence, the court thereupon loses ***all power over the case***, even during the same term." 35 F.2d 734, 735 (7th Cir. 1929) (emphasis added) (first citing

15

*Murray*, 275 U.S. at 358; then citing *Lange*, *supra*); *see also Bozel v. United States*, 139 F.2d 153, 156 (6th Cir. 1943) ("The beginning of the service of a sentence in a criminal case ends the power of the court to control it at the expiration of the term at which it is imposed.") (first citing *Ex parte Lange*, *supra*; then citing *Zerbst v. Kidwell*, 304 U.S. 359 (1938)).

Comparable principles have been widely applied since *Murray* and *Hynes*—including well after the enactment of 18 U.S.C. § 3231, which governs jurisdiction in criminal cases. *See* 18 U.S.C. § 3231 (vesting district courts with original jurisdiction over "all offenses against the laws of the United States"). In *United States v. Harvey*, for example, the First Circuit held that "once the final judgment was imposed," the district court had no authority to amend it to substitute a new restitution payee for the original payee. 20 F.4th 71, 73, 76-79 (1st Cir. 2021). This holding was "[c]ompelled by" "'the general rule of finality' governing criminal convictions and sentences," as well as the restitution statute's "parallel rule of finality." *Id.* at 72, 76 (first quoting *Dillon v. United States*, 560 U.S. 817, 824 (2010); then quoting 18 U.S.C. § 3664(o)). The First Circuit expressly rejected the notion that "the district court retained jurisdiction

16

over the restitution portion of Harvey's sentence under 18 U.S.C. § 3231 . . . ." *Id.* at 76.

In *United States v. Garcia-Herrera*, the Tenth Circuit likewise found that "§ 3231 by itself doesn't give the district court jurisdiction over all post-conviction motions," and held that the district court lacked jurisdiction over the defendant's post-conviction motion to compel the production of his defense counsel's case file and work product. 894 F.3d 1219, 1220 (10th Cir. 2018) (citation omitted).

Similarly, here, the district court's original jurisdiction over Ms. Mims's criminal case ended on or shortly after July 30, 2014—the day the Amended Judgment was entered and Ms. Mims began serving the sentence of probation imposed by it. *See* DE 65 (judgment was entered *nunc pro tunc*); 18 U.S.C. § 3564(a) ("A term of probation commences on the day that the sentence of probation is imposed, unless otherwise ordered by the court."). *See also Harvey*, 20 F.4th at 76-79; *Garcia-Herrera*, 894 F.3d at 1220; *Hynes*, 35 F.2d at 735.

Ms. Mims's criminal case terminated and was thus not an appropriate forum for the government's motion to recover the restitution award after her term of probation ended in 2017. *See United States v.*

17

*Potes Ramirez*, 260 F.3d 1310, 1312-14 (11th Cir. 2001) (holding that the defendant's motion for return of property, filed pursuant to Fed. R. Crim. P. 41 approximately halfway through his nine-year imprisonment term, was a "civil proceeding" because it was "filed after the termination of criminal proceedings"); *United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008) (similarly treating motion for return of property under Fed. R. Crim. P. 41, filed during defendant's term of imprisonment, as a civil complaint governed by the civil procedural rules "[b]ecause there were no criminal proceedings pending at the time of filing"); *see also United States v. Asakevich*, 810 F.3d 418, 420 (6th Cir. 2016) ("Federal courts do not lightly grant relief in non-existent cases.").

**B. Title 18 U.S.C. § 3613(b) did not authorize the district court to reopen Ms. Mims's criminal case or issue substantive orders in it.**

"Once a court sentences a criminal defendant, it has jurisdiction to continue hearing related issues only when authorized by statute or rule." *United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003) (first citing *Carlisle v. United States*, 517 U.S. 416 (1996); then citing *Eaton v. United States*, 178 F.3d 902 (7th Cir. 1999)). "It is to be presumed that a cause

18

lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

Here, the district court incorrectly determined that under 18 U.S.C. § 3613(b), it could exercise jurisdiction over proceedings brought within Ms. Mims's closed criminal case to collect any outstanding restitution previously awarded in that case. (DE 114:2-3). Section 3613 provides "[c]ivil remedies for satisfaction of an unpaid fine" and makes its "provisions . . . available to the United States for the enforcement of an order of restitution." 18 U.S.C. § 3613(f).[2] As demonstrated below, however, section 3613 did not grant the district court post-judgment jurisdiction over Ms. Mims's criminal case because it is not a jurisdictional statute. And to the extent section 3613 may be deemed to govern jurisdiction, the district court misapplied it by entering the

---

[2] Subsection (b), the provision relied upon by the district court, governs the "[t]ermination of [l]iability." The language at issue states that "'[t]he liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution.'" (DE 114:2) (quoting 18 U.S.C. § 3613(b)).

Restitution Order in the criminal case—rather than by requiring the government to pursue independent civil proceedings as the statute plainly contemplates. Also, both the government and the district court failed to comply with section 3613's procedural requirements.

### 1. 18 U.S.C. § 3613(b) is not a jurisdictional statute.

"Jurisdictional provisions set out 'the courts' statutory or constitutional power to adjudicate the case.'" *United States v. Pocklington*, 792 F.3d 1036, 1039 (9th Cir. 2015) (emphasis omitted) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). They must provide "a 'clear' indication that Congress wanted the rule to be 'jurisdictional.'" *Id.* (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435-36 (2011)). In construing statutes "affecting federal jurisdiction," courts must do so "both with precision and with fidelity to the terms by which Congress has expressed its wishes." *Kucana v. Holder*, 558 U.S. 233, 252 (2010) (citation omitted). "[C]ourts should look to whether Congress has included jurisdictional language in the statute in question[.]" *In re Trusted Net Holdings, LLC*, 550 F.3d 1035, 1042 (11th Cir. 2008) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006)). More specifically, "[j]urisdictional statutes speak to the power of

20

the court rather than to the rights or obligations of the parties[.]" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (citation omitted).

Nothing on the face of 18 U.S.C. § 3613 mentions a power specifically of any court. *See Landgraf*, 511 U.S. at 274; *see also Pocklington*, 792 F.3d at 1039 ("The unmistakable language of [18 U.S.C.] § 3565(c)—defining the '***power of the court*** to revoke a sentence of probation'—could hardly speak more clearly to the district court's jurisdiction-defining ***power*** to adjudicate the case.") (emphasis in original) (citation omitted); *United States v. Walden*, 464 F.2d 1015, 1020-21 (4th Cir. 1972) (characterizing 18 U.S.C. § 3231, which vests "districts courts of the United States" with "original jurisdiction" over certain offenses, as a "jurisdictional statute").

Rather, section 3613 only delineates the rights and obligations of a party. *See Landgraf*, 511 U.S. at 274. It states that a judgment imposing a fine or ordering restitution may be enforced by "[t]he United States"— the Appellee here—while specifying how it must do so (*i.e.*, by the initiation of separate civil proceedings). 18 U.S.C. § 3613(a), (f). Section 3613 does not provide any indication, let alone the necessary "clear indication," that it is intended to grant district courts post-

21

judgment jurisdiction over criminal cases. *See Pocklington*, 792 F.3d at 1039. For this reason alone, the Compliance Order must be vacated because the district court was obligated to dismiss the government's Motion to Comply without ruling on the merits. *See United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) (when jurisdiction "does not exist, the only function remaining to the court is that of announcing the fact and dismissing the cause") (citation omitted); *see also Harvey*, 20 F.4th at 79 (vacating amended judgment because the district court lacked jurisdiction to substitute restitution payee); *Garcia-Herrera*, 894 F.3d at 1221 (vacating the partial grant of a post-judgment motion to compel filed in defendant's "closed criminal case," and remanding with directions to dismiss the motion).

## 2. 18 U.S.C. § 3613 requires the government to pursue independent civil proceedings to invoke the statute.

For purposes of enforcing criminal restitution orders, 18 U.S.C. § 3613 incorporates the civil enforcement remedies and procedures under the Federal Debt Collection Procedures Act of 1990 ("FDCPA"). Specifically, section 3613 states that the government may enforce such orders "in accordance with the practices and procedures for the

enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a), (f). "The federal law that provides the practices and procedures for the enforcement of a civil judgment is the FDCPA." *United States v. Phillips*, 303 F.3d 548, 551 (5th Cir. 2002). Section 3613 thus authorizes enforcement of criminal restitution orders in the manner that the FDCPA instructs that civil judgments must be enforced. *See United States v. Mays*, 430 F.3d 963, 966 (9th Cir. 2005) (recognizing that Congress "specifically import[ed] the FDCPA's procedures into the [Mandatory Victims Restitution Act of 1996, or] MVRA"). Accordingly, the FDCPA's scheme must be accounted for in determining section 3613's intended meaning. *See Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1206 (11th Cir. 2003) ("[T]he effect of an incorporation by reference is the same as if the referenced material were set out verbatim in the referencing statute.").

The FDCPA governs the recovery of "debts" owed to the government. 28 U.S.C. §§ 3001, 3002(3). The types of debt run the gamut—from "an amount that is owing to the United States on account of a direct loan," to rents that have accrued on leases and proceeds owed under purchase-and-sale agreements, to name a few. 28 U.S.C. § 3002(3).

23

The FDCPA provides for a civil process to collect these covered debts. The FDCPA is comprised of four subchapters. According to subchapter A—the "Definitions and General Provisions"—the act "provides the 'exclusive civil procedures for the United States' to recover on . . . judgments for restitution" and other debts. *U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1252 (11th Cir. 2020) (footnotes omitted) (quoting 28 U.S.C. §§ 3001, 3002(3)(B), 3002(8)). Significantly, the statute does not simply state "procedures," but expressly refers to "civil procedures." And while the term "procedure" means "[a] specific method or course of action," *procedure*, BLACK'S LAW DICTIONARY (11th ed. 2019), the term "civil procedure" more specifically refers to "the methods and practices used in ***civil litigation***," *civil procedure*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).

Subchapter B makes available to the government certain prejudgment remedies "in a proceeding in conjunction with the **complaint**." 28 U.S.C. § 3101(a) (emphasis added). Again, the word "complaint" most commonly refers to "[t]he initial pleading that starts a **civil action**." *Complaint*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). Additionally, prejudgment remedies are otherwise

24

available "any time after the filing of a ***civil action*** . . . ." 28 U.S.C. § 3101(a) (emphasis added).

Subchapter C makes certain post-judgment remedies available upon "commencement by the United States of an action or proceeding under this subchapter to obtain a remedy . . . ." 28 U.S.C. § 3202(a)-(b). The act expressly subjects such actions and proceedings to the Federal Rules of Civil Procedure. 28 U.S.C. § 3003(f). Subchapter D similarly provides for the filing of a fraudulent transfer "action or proceeding" "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 3306(a).

These references to "civil" procedures, litigation, actions, and proceedings throughout the FDCPA's entire statutory scheme underscore Congress's intent to establish civil mechanisms and processes for the government to recover virtually any debt owed to it. Restitution is one type of debt. *Escobio*, 946 F.3d at 1252 (quoting 28 U.S.C. §§ 3001, 3002(3)(B), 3002(8)). So, in directing the government to enforce criminal restitution orders in the same manner it would enforce a civil judgment under the FDCPA, *see* 18 U.S.C. § 3613(a), Congress clearly intended for the government to enforce criminal restitution orders through civil

proceedings. *See* 18 U.S.C. § 3613(f) (making subsection (a) applicable to restitution); *Mays*, 430 F.3d at 965-66 (recognizing that the FDCPA's "civil enforcement remedies" and "procedures," as "specifically import[ed]" into the restitution act, authorize the government "to collect debts owed to it by means of a civil action").

Tellingly, section 3613 is entitled "***Civil*** remedies for satisfaction of an unpaid fine," (emphasis added). *See United States v. Bryant*, 996 F.3d 1243, 1258 (11th Cir. 2021) ("Titles [of statutes] are permissible indicators of meaning.") (citation omitted). Consistent with this title, nothing in subsection (a)—where language about the mode of enforcement is located—or elsewhere in the statute instructs the government or the court to apply FDCPA practices and procedures specifically within an existing or prior criminal case. In fact, the term "criminal" appears nowhere within section 3613's text, which is critical because a statute's "plain meaning" must be discerned from "the actual language used in [the] statute." *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1224 (11th Cir. 2001).

With these omissions, "[t]he negative implication is that Congress meant to prohibit enforcement in [criminal proceedings]," when drafting

section 3613. *See Schultz v. United States*, 594 F.3d 1120, 1123 (9th Cir. 2010) (examining an 18 U.S.C. § 3664(m)(1) provision) (first citing *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979); then citing *Botany Mills v. United States*, 278 U.S. 282, 289 (1929)); *see also In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021) ("'[T]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'") (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)); *Goldman v. First Fed. Sav. & Loan Ass'n of Wilmette*, 518 F.2d 1247, 1250 n.6 (7th Cir. 1975) ("If the statute expressly authorizes proceedings to enforce its provisions . . . ordinarily it will be inferred that no other means of enforcement . . . was intended by the legislature.") (first citing *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974); then citing *Securities Inv. Protection Corp. v. Barbour*, 421 U.S. 412, 418 (1975)).

Section 3613 thus "prescribes only one method by which [the government] may enforce a restitution order": through an independent civil proceeding. *See Schultz*, 594 F.3d at 1123. Because the government never instituted one to enforce the Restitution Order against Ms. Mims, the district court should have dismissed the proceeding below.

27

**3. The government and the district court failed to comply with 18 U.S.C. § 3613's procedural requirements.**

"The FDCPA limits the enforcement remedies available to the [government] when it seeks to collect restitution" awarded by a judgment. *Escobio*, 946 F.3d at 1254. *See* 28 U.S.C. § 3203 (writ of execution); 28 U.S.C. § 3204 (installment payment order); 28 U.S.C. § 3205 (writ of garnishment). The government's motions against Ms. Mims made no request for these particular remedies. (DE 102; DE 110). To the extent the motions can be construed as seeking one of the remedies, the government made no effort to comply with the remedy's procedural requirements. *See, e.g.*, 28 U.S.C. § 3204(a) (setting forth: (i) only two bases for issuance of installment payment orders; (ii) the application, notice, and hearing requirements; and (iii) factors "the court shall take into consideration after a hearing").

Likewise, the district court failed to comply with its own procedural obligations, such as "tak[ing] into consideration after a hearing" any dependents Ms. Mims may have, among other factors. *Id.* Ms. Mims did not participate in the first hearing before Judge Cooke due to lack of

notice. During the second hearing, Judge Cooke made clear that the district court lacked jurisdiction to act—as she had suspected and expressed to the government during the first hearing. Chief Judge Altonaga reversed course without warning when she issued the Compliance Order. And she did so without hearing from the parties. This was problematic because the Compliance Order does not simply enforce the Restitution Order; it modifies the Order's payment schedule by mandating that Ms. Mims pay the previously-ordered monthly installments (DE 65:4), *in addition* to arrears that have accrued since 2017. *See* DE 114:6 ("[Ms. Mims] must renew the restitution payments to her victims and make up for the past five years of noncompliance with the Amended Judgment."). Ms. Mims was not afforded the opportunity to explain why such a modification would be inappropriate.

"[B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) (citation omitted). "[T]he complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error," and has been grounds for reversal of "district court orders and judgments in a variety

29

of settings when such an opportunity was not provided." *Id.* (citations omitted). Accordingly, assuming *arguendo* that the district court had jurisdiction, the Compliance Order must be reversed based on the violation of Ms. Mims's right to due process and an opportunity to be heard. *See id.*

## CONCLUSION

For the foregoing reasons, Ms. Mims respectfully requests that this Court vacate the district court's order granting the Motion for an Order Directing the Defendant to Comply with the Payment Schedule Imposed by this Court (DE 110; DE 114). Alternatively, Ms. Mims asks that the Court reverse the order on appeal and remand this case to the district court for further proceedings consistent with Ms. Mims's right to notice and the opportunity to be heard.

Respectfully submitted,

MICHAEL CARUSO
Federal Public Defender

*/s/ Ta'Ronce Stowes*
TA'RONCE STOWES
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1500
Miami, Florida 33130
(305) 530-7000

31

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation and typeface requirements of Fed. R. App. P. 32(a)(7)(B), because it contains 5,171 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Century Schoolbook font.

*/s/ Ta'Ronce Stowes*
**TA'RONCE STOWES**

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 17th day of February 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and sent four copies to the Clerk of the Court via third-party commercial carrier for delivery within three days.  I also certify that the foregoing document is being served this day via CM/ECF on Lisa Tobin Rubio, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*/s/ Ta'Ronce Stowes*
**TA'RONCE STOWES**