[PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 22-13215

_____

UNITED STATES OF AMERICA,

                                                  Plaintiff-Appellee,

*versus*

MIKEL MIMS,

                                                  Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:14-cr-20210-MGC-1

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

BRANCH, Circuit Judge:

This appeal requires us to decide, as a matter of first impression, whether a district court continues to have jurisdiction in a criminal case to order compliance with unsatisfied restitution obligations after the defendant completes her probationary sentence.

In 2014, Mikel Mims pleaded guilty to one count of conspiracy to commit wire fraud. The district court sentenced her to three years' probation and ordered her to pay $255,620 in restitution. After Mims completed probation in 2017, she stopped paying restitution despite her remaining obligations. In 2022, the district court, within Mims's original criminal case, ordered Mims to renew her compliance with the district court's 2014 restitution order. Mims appeals the district court's 2022 order and argues that the district court no longer had jurisdiction in her original criminal case to order compliance. She also argues that, even if the district court had jurisdiction, the district court violated her right to due process when it entered the 2022 order.

District courts have the authority to enforce their own criminal sentences, and here the district court did so after giving Mims notice and opportunities to respond. Thus, after careful review, and with the benefit of oral argument, we affirm.

## I. Background

In 2014, a federal grand jury in the Southern District of Florida indicted Mims on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371 and four counts of wire fraud

22-13215               Opinion of the Court                          3

in violation of 18 U.S.C. § 1343. Mims pleaded guilty to one count of conspiracy to commit wire fraud. The district court sentenced Mims to three years' probation and ordered Mims to pay $255,620 in restitution. The district court ordered Mims to "pay restitution at the rate of 10% of monthly gross earnings, until such time as the court may alter that payment schedule in the interests of justice."

In 2017, Mims completed her term of probation and stopped paying restitution. According to the government, Mims paid only $58,232.93, or approximately 23%, of her restitution obligation while she was on probation.

Between March and August 2021, the government mailed Mims three forms requesting financial documentation. Mims did not respond to any of the government's requests. On September 24, 2021, the government moved for a hearing regarding Mims's failure to pay restitution. The next month, the district court held a Zoom hearing on the issue. Mims did not receive notice of the Zoom hearing and did not attend. The district court acknowledged that the hearing could not proceed without Mims because of "[d]ue process, notice, [and] opportunity to defend" concerns. The district court also questioned whether it had jurisdiction in Mims's criminal case after Mims's term of probation ended.

In November 2021, Mims (represented by counsel) and the government attended a status conference about Mims's failure to pay restitution. At the conference, Mims argued that the district court lacked jurisdiction to enforce the restitution order in her criminal case because her term of probation had ended. According

4                        Opinion of the Court                        22-13215

to Mims, the government had to initiate separate civil proceedings to enforce the restitution order. In response, the government argued that the district court had jurisdiction to enforce the restitution order in the criminal case under 18 U.S.C. § 3613A, the default provision of the Mandatory Victims Restitution Act ("MVRA").[1]

The district court again expressed doubt as to whether it had jurisdiction in Mims's criminal case, and it directed the government to file a written motion for an order to enforce compliance with the restitution order that set forth exactly what the government was asking the court to do and the jurisdictional basis for such action.

Following the government's motion and a response by Mims, the district court granted the government's motion and ordered Mims to renew her compliance with the restitution order

---

[1] Section 3613A states that once a defendant defaults on her restitution,

> the court may, pursuant to section 3565, revoke probation or a term of supervised release, modify the terms or conditions of probation or a term of supervised release, resentence a defendant pursuant to section 3614, . . . enter or adjust a payment schedule, or take any other action necessary to obtain compliance with the order of a fine or restitution.

18 U.S.C. § 3613A(a)(1). Section 3565 permits a court to continue, modify, or revoke a defendant's probation when "the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation." *Id.* § 3565(a).

22-13215              Opinion of the Court                         5

("the compliance order").[2] Citing various provisions of the MVRA and the Federal Debt Collection Procedures Act of 1990 ("FDCPA"),[3] the district court concluded that it had "jurisdiction to enforce restitution in the underlying criminal case." Accordingly, the district court ordered Mims to "comply with the payment schedule listed in the Amended Judgment," including "mak[ing] up for . . . [her] noncompliance" since 2017, and "fill out and submit the Financial Statement of Debtor form." Mims timely appealed.

## II.   Discussion

On appeal, Mims contends (1) that the district court lacked jurisdiction to enter the compliance order,[4] and (2) that even if the district court had jurisdiction, it violated Mims's right to due

---

[2] The compliance order was signed by a different district judge "[o]n behalf of" the district judge who held the Zoom hearing and status conference.

[3] The FDCPA "provides the exclusive civil procedures . . . to recover a judgment" on restitution in a criminal case. 28 U.S.C. §§ 3001(a)(1), 3002(3)(B), 3003(b)(2).

[4] Ultimately, we conclude that the district court had ancillary jurisdiction to issue the compliance order. Thus, we do not reach the parties' arguments about whether various provisions of the MVRA or FDCPA provided a statutory basis for the district court's jurisdiction. And although the district court relied on some of those statutory provisions instead of its ancillary jurisdiction, we "may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *PDVSA US Litig. Tr. v. LukOil Pan Ams. LLC*, 65 F.4th 556, 562 (11th Cir.) (quotation omitted), *cert. denied*, 144 S. Ct. 343 (2023).

process when it entered the compliance order.  We take each of these issues in turn.

### A. The district court had jurisdiction to enter the compliance order

"We review de novo the subject matter jurisdiction of the district court." *United States v. Benjamin*, 958 F.3d 1124, 1133 (11th Cir. 2020).  "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, federal courts generally "possess only that power authorized by the Constitution and statute." *United States v. Rivera*, 613 F.3d 1046, 1049 (11th Cir. 2010) (alteration adopted) (quoting *Kokkonen*, 511 U.S. at 377).  The Constitution provides, in relevant part, that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under . . . the Laws of the United States . . . ." U.S. Const. art. III, § 2, cl. 1.  And as authorized by Congress, federal district courts "have original jurisdiction . . . of all offenses against the laws of the United States." 18 U.S.C. § 3231.  For certain offenses, once a defendant is convicted, the district court must order "that the defendant make restitution to the victim of the offense." *Id.* § 3663A(a)(1).  Thus, as Mims concedes, the district court had jurisdiction over her underlying criminal offense and lawfully ordered her to pay restitution in the restitution order.

A federal court may also assert "ancillary jurisdiction." *Kokkonen*, 511 U.S. at 378.  The ancillary-jurisdiction doctrine "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other

matters properly before them." *Id.* This doctrine "enable[s] a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80; *see also United States v. Batmasian*, 66 F.4th 1278, 1281 (11th Cir. 2023) (discussing ancillary jurisdiction). Indeed, "[w]ithout jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (quotation omitted). Accordingly, we have historically recognized that district courts have "inherent power to enforce compliance with their lawful orders through civil contempt." *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991).[5]

---

[5] We have also held that a "district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Puentes*, 803 F.3d 597, 606 (11th Cir. 2015). But no such modification occurred here. Mims argues that the compliance order improperly modified the restitution order by adding "arrears that have accrued since 2017," but she is wrong. Although the compliance order states that Mims must "make up for the past five years of noncompliance with the" restitution order, the district court did not order any further monetary penalties or "alter[] the amount of restitution [Mims] is required to pay." *Puentes*, 803 F.3d at 605. Thus, the compliance order did not "modify" Mims's restitution obligations; it merely ordered Mims to continue abiding by the original restitution order.

But in any event, the Federal Rules of Criminal Procedure expressly authorize district courts to enforce their restitution orders via

> *any order reasonably necessary to ensure compliance with a restitution order* or a notice order after disposition of an appeal, including: (A) a restraining order; (B) an injunction; (C) an

8                    Opinion of the Court                    22-13215

Though in *Kokkonen* the Supreme Court ultimately found a lack of ancillary jurisdiction when a district court tried to enforce a settlement agreement after it dismissed the underlying lawsuit, the Court stated in dicta that the "situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal." 511 U.S. at 381. In that circumstance, the Court explained that "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.*

Here, the district court lawfully entered the restitution order as part of Mims's criminal judgment. *See* 18 U.S.C. § 3663A(a)(1). Mims does not contest the lawfulness of the restitution order. Nevertheless, according to the government, Mims has not made her required monthly payments towards her restitution obligations since 2017. Mims concedes that she was not in compliance with the restitution order when the district court issued the compliance order. By failing to make her required payments under the restitution order, Mims violated her criminal sentence. And as we have explained, district courts have ancillary jurisdiction to enforce their own judgments. *See Kokkonen*, 511 U.S. at 380–81; *see also* Fed. R. Crim. P. 38(e)(2). Accordingly, we conclude that the district

---

order requiring the defendant to deposit all or part of any monetary restitution into the district court's registry; or (D) an order requiring the defendant to post a bond.

Fed. R. Crim. P. 38(e)(2) (emphasis added). Thus, we have no trouble concluding that the compliance order was "authorized by a . . . rule." *Puentes*, 803 F.3d at 606.

22-13215               Opinion of the Court                    9

court had ancillary jurisdiction to enforce the restitution order it had included in Mims's criminal sentence via the compliance order.

Our conclusion comports with other analogous cases. For example, we have held that district courts can exercise equitable jurisdiction over defendants' postjudgment civil motions for the return of property seized by the government in criminal cases. *See United States v. Potes Ramirez*, 260 F.3d 1310, 1314–15 (11th Cir. 2001); *United States v. Martinez*, 241 F.3d 1329, 1330 (11th Cir. 2001). In both *Potes Ramirez* and *Martinez*, the defendants moved under Federal Rule of Criminal Procedure 41(e), within their underlying criminal cases, years after the district courts entered final judgments. *See Potes Ramirez*, 260 F.3d at 1312; *Martinez*, 241 F.3d at 1329. We did not require either district court to open a new civil docket to entertain the defendants' motions even though we deemed the motions "civil proceeding[s]." *Potes Ramirez*, 260 F.3d at 1313–14 & n.5. Instead, these cases illustrate district courts' power to entertain certain motions, including "civil" motions, within an existing criminal docket after criminal proceedings end.

Mims resists our conclusion, arguing that the district court's previous closure of her criminal case had some jurisdictional effect. But closing a case "has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository."[6] *Fla.*

---

[6] We note, however, that Rule 41 voluntary dismissals granted without conditions raise separate issues that we need not address here because Mims's

*Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001) (quotation omitted). "Designating a case 'closed' does not prevent the court from reactivating a case either of its own accord or at the request of the parties." *Id.* Accordingly, the district court did not divest itself of jurisdiction by closing Mims's criminal case.

### B. The district court did not violate Mims's right to due process

Next, Mims argues that even if the district court had jurisdiction to enter the compliance order, the district court "violat[ed] . . . Ms. Mims's right to due process and an opportunity to be heard" when it entered the compliance order. In particular, Mims argues that she was not offered an opportunity to explain her opposition to the renewal of her restitution payments plus "arrears that have accrued since 2017."[7]

Because Mims did not object to lack of due process below, we review for plain error.[8] *See United States v. Moore*, 22 F.4th 1258, 1270 (11th Cir. 2022); *United States v. McNair*, 605 F.3d 1152, 1222

---

restitution terms were incorporated into her criminal sentence. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1265 (11th Cir. 2021).

[7] As we explained previously, the district court did not modify the restitution order. Therefore, to the extent that Mims's due process argument hinges on the alleged modification of the restitution order, it necessarily fails.

[8] On appeal, Mims also argues that to the extent the government sought any remedies under the FDCPA below, the government and district court did not comply with the FDCPA's procedural requirements. We do not reach this argument because we conclude, as discussed, that the district court was proceeding under its inherent authority with ancillary jurisdiction, not proceeding under the FDCPA.

22-13215               Opinion of the Court                    11

(11th Cir. 2010). Plain error occurs when there is "(1) error, (2) that is plain, and (3) that affects substantial rights." *McNair*, 605 F.3d at 1222 (quotation omitted). If, but only if, these three requirements are met, then "we may exercise discretion to correct a forfeited error . . . if (4) the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

The district court did not commit plain error by issuing the compliance order. "Before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) (alteration adopted) (quoting *Day v. McDonough*, 547 U.S. 198, 210 (2006)). Mims had notice that the government sought her compliance with the restitution order, and she received numerous opportunities to argue that she could not financially afford to resume the required monthly installments and pay the arrears for the past five years. For instance, before her hearings, the government sent Mims three forms in which she could have informed the government of changed financial circumstances that affected her ability to repay the debt.[9] The district court held a

---

[9] Mims asserts that the government's three requests for financial information are "irrelevant" because they are "extrajudicial correspondence solely from one party to another." But the requests do not solely implicate the parties. Mims had an obligation to notify the government *and* the court of any material change in her financial circumstances, and she still has the opportunity to do so (*i.e.*, be heard) if she cannot comply with the original payment schedule. Section 3664(k) of Title 18 of the United States Code outlines this process:

| 12 | Opinion of the Court | 22-13215 |

status conference concerning Mims's noncompliance with the restitution order to afford Mims "[d]ue process, notice, [and an] opportunity to defend." Mims and her counsel attended the status conference wherein the district court agreed with the government that Mims was failing to comply with the restitution order. And the district court requested a written motion from the government that detailed what remedy the government sought as well as the authority for said remedy and allowed Mims an opportunity to respond.

Each time, Mims rejected her opportunity to be heard on her compliance with the restitution order or her ability to repay the debt: she either did not respond (as with the government's three requests for financial information) or used her opportunity merely to contest the district court's jurisdiction (as with the hearing and written briefing). Moreover, the district court gave Mims another opportunity to notify the court of any changed financial

---

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

22-13215               Opinion of the Court                        13

circumstances by ordering her to submit a financial statement. Accordingly, Mims received "fair notice and an opportunity to present [her] position[]." *Smith*, 30 F.4th at 1338 (quotation omitted).

In opposition to this conclusion, Mims contends that she did not have a meaningful opportunity to justify her noncompliance with the restitution order because the government failed to establish jurisdiction; thus, any argument on the merits would have been "futile." We disagree. Although the district court was concerned that it did not have jurisdiction, the district court signaled that it agreed with the government on the merits of Mims's noncompliance, and it gave Mims an opportunity to respond in writing to the government's motion on the merits. Mims did not address her noncompliance at the status conference. The government's motion addressed the merits of Mims's noncompliance; Mims's response did not. Thus, because Mims was afforded several opportunities to be heard, we find no plain error. *See United States v. Pacheco-Romero*, 995 F.3d 948, 958 (11th Cir. 2021) (rejecting a due process argument where the "appellants received sufficient notice and several opportunities to be heard" before the district court entered judgment).

### III.   Conclusion

Mims has not complied with the district court's restitution order in her criminal case since 2017. For the above reasons, we conclude that the district court had inherent authority to reorder Mims's compliance with its restitution order even though she had

| 14 | Opinion of the Court | 22-13215 |

completed her term of probation. And the district court offered Mims opportunities to be heard before it reordered compliance, which satisfied due process. Accordingly, we affirm.

**AFFIRMED.**