No. 22-13215-AA

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

───────────────

**UNITED STATES OF AMERICA,**
                    *Plaintiff/Appellee,*

v.

**MIKEL MIMS,**
                    *Defendant/Appellant.*

───────────────

**On Appeal from the United States District Court
For the Southern District of Florida**

───────────────

**PETITION FOR PANEL REHEARING AND
REHEARING *EN BANC* BY
APPELLANT MIKEL MIMS**

───────────────

**HECTOR A. DOPICO
Federal Public Defender
TA'RONCE STOWES
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1500
Miami, Florida 33130-1555
(305) 536-6900**

**THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

### United States v. Mikel Mims,
### Case No. 22-13215-AA

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1:

Altonaga, Hon. Cecilia M.

Becker, Abigail Emily

Caruso, Michael

Cooke, Hon. Marcia G.

Davis, Michael

Davidson, H. Ron

Dopico, Hector

Fajardo Orshan, Ariana

Garber, Hon. Barry L.

Gelber, Daniel E.

Ghomeshi, Sogol

Gonzalez, Juan Antonio

C-1 of 3

Goodman, Hon. Jonathan

Greenberg, Gerald

Habbershaw, Simon

Hirsch, Lisa

Lapointe, Markenzy

Matzkin, Daniel

Mims, Mikel

O'Byrne, Hayden P.

Otazo-Reyes, Hon. Alicia M.

Perwin, Amanda

Phillips-Williams, Bonnie

Reding Quiñones, Jason A.

Richards, George

Rosado, Vivian

Rubio, Lisa Tobin

Smith, Chapman

Stowes, Ta'Ronce

United States of America

Vereen, Roderick Darrell

Walkins, Arimentha R.

Williams, Hon. Kathleen M.

<u>s/ Ta'Ronce Stowes</u>

**TA'RONCE STOWES**

## STATEMENT OF COUNSEL
## REGARDING *EN BANC* CONSIDERATION

I express belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision of the Supreme Court of the United States, as well as the following precedents of this circuit and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court:

- *Peacock v. Thomas*, 516 U.S. 349 (1996).

- *Calderon v. Sixt Rent a Car, LLC* make clear that panels "do not address arguments that have been abandoned." 114 F.4th 1190 (11th Cir. 2024).

- *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814 (11th Cir. 2020).

- *Reaves v. Secretary, Fla. Dep't of Corrs.*, 872 F.3d 1137 (11th Cir. 2017).

- *Henson v. Ciba-Geigy Corp.*, 261 F.3d 1065 (11th Cir. 2001) (per curiam), *aff'd sub nom. Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28 (2002).

## STATEMENT OF COUNSEL, cont'd

- *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851 (11th Cir. 1999).

- *Johnson v. Wainwright*, 806 F.2d 1479 (11th Cir. 1986).

- *McDonald v. Oliver*, 642 F.2d 169 (5th Cir. 1981).

/s/ Ta'Ronce Stowes
 TA'RONCE STOWES
Assistant Federal Public Defender
*Attorney for Mikel Mims*

ii

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS

AND CORPORATE DISCLOSURE STATEMENT................................C-1

STATEMENT OF COUNSEL REGARDING *EN BANC*

CONSIDERATION.......................................................................... i

TABLE OF CONTENTS ............................................................... iii

TABLE OF CITATIONS ............................................................... v

Statement of the issues meriting *en banc* consideration.......................... 1

Course of proceedings and disposition of the case.................................... 2

Statement of facts relevant to the issues on rehearing............................. 4

Reasons for granting *en banc* review........................................................ 8

I.  *En banc* rehearing is warranted........................................................ 8

    A.  The panel decision runs contrary to cases where this Court's

        panels declined to affirm a district court on grounds omitted

        from the appellee's brief.......................................................... 8

    B.  The panel decision also runs contrary to circuit and Supreme

        Court precedents imposing a necessity limitation on ancillary

        jurisdiction ............................................................................ 11

C.    These issues warrant *en banc* consideration......................... 14

II.    In deciding the due process issue, the panel seemingly overlooked

   or misapprehended critical points of law and fact, thereby

   warranting panel rehearing........................................................... 17

CONCLUSION ........................................................................................... 20

CERTIFICATE OF COMPLIANCE......................................................... 21

CERTIFICATE OF SERVICE................................................................. 22

**APPENDIX**

*United States v. Mims*, 143 F.4th 1311, 2025 WL 1934570 (11th Cir. July

15, 2025) ................................................................................................. A

# TABLE OF CITATIONS

Page(s)

**CASES**

*Allapattah Servs., Inc. v. Exxon Corp.*,

    362 F.3d 739 (11th Cir. 2004) ............................................................. 14

*Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*,

    182 F.3d 851 (11th Cir. 1999) ..................................................... ii, 9, 10

*Bonner v. City of Prichard, Ala.*,

    661 F.2d 1206 (11th Cir. 1981) ............................................................ 11

*Calderon v. Sixt Rent a Car, LLC*

    114 F.4th 1190 (11th Cir. 2024) ............................................... i, 8, 9, 10

*CSX Transp., Inc. v. Hensley*,

    556 U.S. 838 (2009) ............................................................................. 15

*Firestone Tire & Rubber Co. v. Risjord*,

    449 U.S. 368 (1981) ............................................................................. 19

*Greenlaw v. United States*,

    554 U.S. 237 (2008) ............................................................................. 16

*Henson v. Ciba-Geigy Corp.*,

    261 F.3d 1065 (11th Cir. 2001) .................................................... i, 9, 10

v

*In re Hoggle*,

12 F.3d 1008 (11th Cir. 1994) ............................................................. 18

*In re Nosek*,

544 F.3d 34 (1st Cir. 2008).................................................................. 18

*Johnson v. Wainwright*,

806 F.2d 1479 (11th Cir. 1986) ......................................................... ii, 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375 (1994) ..................................................................11, 15, 16

*McDonald v. Oliver*,

642 F.2d 169 (5th Cir. 1981) ............................................... ii, 11, 13, 14

*PDVSA US Litig. Tr. v. LukOil Pan Ams. LLC*,

65 F.4th 556 (11th Cir. 2023).............................................................. 10

*Peacock v. Thomas*,

516 U.S. 349 (1996) .........................................................i, 11, 12, 13, 16

*Reaves v. Secretary, Fla. Dep't of, Corrs.*,

872 F.3d 1137 (11th Cir. 2017) ..................................................... i, 9, 10

*Riggs v. Johnson Cnty.*,

73 U.S. 166.......................................................................................... 11

*U.S. Commodity Futures Trading Comm'n v. Escobio*,

    946 F.3d 1242 (11th Cir. 2020) ........................................................... 13

*United States v. Hohri*,

    482 U.S. 64 (1987) ................................................................................ 14

*United States v. Mims*,

    143 F.4th 1311 2025 WL 1934570

    (11th Cir. July 15, 2025).......................................5, 3, 10, 13, 15, 17, 18

*United States v. Sineneng-Smith*,

    590 U.S. 371 (2020) .............................................................................. 16

*United States v. US Stem Cell Clinic, LLC*,

    998 F.3d 1302 (11th Cir. 2021) ...........................................8, 10, 14, 15

*Young v. Grand Canyon Univ., Inc.*,

    980 F.3d 814 (11th Cir. 2020) ................................................. i, 8, 9, 10

**STATUTES**

18 U.S.C. § 371 ......................................................................................... 4

18 U.S.C. § 1343 ....................................................................................... 4

18 U.S.C. § 3612(c) ................................................................................. 12

18 U.S.C. § 3613 ................................................................................... 7, 8

18 U.S.C. § 3613(b)................................................................................. 17

## Rules

11th Cir. R. 40-3(h).................................................................................. 16

11th Cir. R. 40-3(a), (b), (c), (d), and (j)................................................... 21

Fed. R. App. P. 32(a)(5) and (a)(6) .......................................................... 21

Fed. R. App. P. 40.................................................................................... 21

## STATEMENT OF THE ISSUES
## MERITING *EN BANC* CONSIDERATION

1.    Is the court of appeals prohibited from affirming a district court on a ground that neither the district court considered nor the appellee briefed?

2.    Is a district court prohibited from exercising ancillary jurisdiction in a criminal case to order the defendant's compliance with existing restitution obligations where a statute already governs the matter?

## COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

In 2014, Ms. Mims was indicted in the Southern District of Florida on five wire fraud-related charges. (DE 3; DE 42). The district court adjudicated Ms. Mims guilty of one count of conspiracy to commit wire fraud, in accordance with a written plea agreement. (DE 42; DE 65). She was sentenced to three years' probation and ordered to pay monthly restitution. (DE 65). Ms. Mims completed her term of probation in 2017.

In 2021, four years after the probation term ended, the government filed two motions, within Ms. Mims's underlying criminal case, claiming that she had not paid restitution since completing probation. (DE 102; DE 110). The second motion requested, among other things, that Ms. Mims be directed to comply with the restitution payment schedule ordered in the Amended Judgment issued in 2014. (DE 110). The district court judge who was originally assigned to the case expressed reservations about the motion, and found that the court lacked jurisdiction to act in the criminal case. A different district court judge, however, ultimately issued an order mandating compliance with the restitution order. (DE 114).

Ms. Mims appealed the compliance order (DE 116), which this Court affirmed in a published opinion. *United States v. Mims*, 143 F.4th 1311

2

(11th Cir. 2025). This petition follows.

## STATEMENT OF FACTS
## RELEVANT TO THE ISSUES ON REHEARING

### Ms. Mims's Prior Criminal Case

On April 3, 2014, a federal grand jury in the Southern District of Florida returned an indictment charging Ms. Mims with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371 (Count 1); and four counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 2 and 4 through 6). (DE 3:1-9). The charges stem from Ms. Mims's involvement in a scheme spanning from December 2008 to March 2013, which was designed to generate proceeds from sales of fraudulently manufactured tickets to a tennis tournament held in Miami-Dade County. (DE 42:14-15).

Ms. Mims pled guilty to Count 1, conspiracy to commit wire fraud. (DE 42). The district court entered an Amended Judgment, *nunc pro tunc* to July 30, 2014, adjudicating Ms. Mims guilty of that offense, sentencing her to three years' probation, and dismissing the remaining counts. (DE 65:1-2). The Amended Judgment ordered that she pay $255,620 in restitution, at a rate of ten percent of her monthly gross earnings (the "Restitution Order"). (DE 65:4).

4

Ms. Mims completed probation on or about July 30, 2017. To date, at least $58,232.93 has been credited towards the restitution balance. (DE 110:1).

### The Enforcement Proceedings in the Criminal Case

In September 2021—four years after Ms. Mims's probation term ended—the government filed within her prior criminal case a motion (i) claiming she had not paid restitution since 2017, and (ii) requesting a hearing to determine why. (DE 102). A hearing was held, via Zoom video conference, on October 21, 2021. Because Ms. Mims received no notice of it, she was not present. (DE 126:2,5).

At the hearing, the Honorable Marcia G. Cooke—the district judge assigned to the prior criminal case—questioned the purpose of the government's motion. (DE 126:2,4). The court doubted that it had jurisdiction to act within the criminal case given that Ms. Mims's probation term ended years before then. (DE 126:2-4). The court also questioned why she "never had one of these before in 17 years," in the "hundreds of cases where people owe millions of dollars." (DE 126:4-6). Judge Cooke declined to take further action without Ms. Mims being notified and given an opportunity to be heard, and until the court could

5

consult with the probation office on the matter. (DE 126:2,5).

A status conference, again held via Zoom video conference, followed on November 3, 2021. (DE 127). Judge Cooke, both parties, and a probation officer attended. Following argument from court-appointed defense counsel, the court informed the parties that it discussed the matter with the chief probation officer, who "seemed to be unaware of the frequency of these matters." (DE 127:5). The court also consulted with the probation officer in attendance, who explained that once criminal defendants "have completed supervision we no longer have contact with them, and it becomes a civil matter for the [Financial Litigation Unit] to monitor, at which point I no longer have any jurisdiction to violate any of her supervision as it has terminated." (DE 127:6). The government then presented argument, after which the court "f[ound] at this time I have no jurisdiction to act." (DE 127:11-12). The court did, however, welcome a motion from the government explaining whatever law it believed provided grounds for exercising jurisdiction under the prior criminal case, and a response from Ms. Mims. (DE 127:13-14).

On November 5, 2021, the government filed a Motion for an Order Directing the Defendant to Comply with the Payment Schedule Imposed

by this Court (the "Motion to Comply"). (DE 110). Ms. Mims responded on November 18, 2021, and a reply in support of the motion was filed five days later. (DE 111; DE 112). On August 18, 2022, the district court issued in the criminal case an Order granting the Motion to Comply (the "Compliance Order"). (DE 114).

The Compliance Order was signed by the Honorable Cecilia M. Altonaga, the Chief Judge of the Southern District of Florida (DE 114:6)—not Judge Cooke, who in the first instance held that the court lacked criminal jurisdiction and was the only judge to hear oral argument from the parties. According to the Order, per Chief Judge Altonaga, the court agreed with the government's argument "that jurisdiction exists because the criminal restitution judgment has not expired," under subsection (b) of 18 U.S.C. § 3613. (DE 114:2-3) (citation omitted). The Compliance Order directs that Ms. Mims "must comply with the payment schedule listed in the Amended Judgment." (DE 114:6). More specifically, Ms. Mims "must renew" her restitution payments and "must make up for the past five years" of nonpayment. *Id.* The Order also directs Ms. Mims to submit a completed Financial Statement of Debtor form. *Id.*

7

**REASONS FOR GRANTING *EN BANC* REVIEW**

**I.   *En banc* rehearing is warranted.**

**A.   The panel decision runs contrary to cases where this Court's panels declined to affirm a district court on grounds omitted from the appellee's brief.**

"It is generally true that an appellate court can affirm on any ground supported by the record. Nevertheless, [panels] have held a number of times that an appellee abandons an alternative ground for affirmance on the merits by not raising it in its answer brief." *United States v. US Stem Cell Clinic, LLC*, 998 F.3d 1302, 1311-12 (11th Cir. 2021) (Jordan, J., concurring) (citations omitted). *See also Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 821 n.4 (11th Cir. 2020) ("Although an appellee may urge us to affirm on any basis supported by the record, it still abandons any position that it fail[s] to list or otherwise state it as an issue on appeal." (alteration in original) (citations omitted)).

Meanwhile, opinions like *Calderon v. Sixt Rent a Car, LLC* make clear that panels "do not address arguments that have been abandoned." 114 F.4th 1190, 1208 (11th Cir. 2024) (declining to address argument of appellee that "c[a]me too late" because it was not raised

8

"prior to oral argument" and, therefore, had been "abandoned"). *See also Young*, 980 F.3d at 821 n.4 (appellee "waived" argument that "it failed to present either to the district court or in its brief to [this Court]" and asserted only at oral argument); *Reaves v. Secretary, Fla. Dep't of Corrs.*, 872 F.3d 1137, 1149 n.4 (11th Cir. 2017); *Johnson v. Wainwright*, 806 F.2d 1479, 1481 n.2 (11th Cir. 1986).

Accordingly, this Court's panels have ignored available alternative grounds for affirming district courts' jurisdiction where the grounds were either omitted from the appellee's brief or briefed "only superficially." *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 852-53, 859 (11th Cir. 1999). The panel in *Henson v. Ciba-Geigy Corp.*, in fact, expressly held that it would "not address" any "potential basis" under the ancillary jurisdiction doctrine because the appellee "did not . . . assert" it. 261 F.3d 1065, 1068 (11th Cir. 2001) (per curiam), *aff'd sub nom. Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28 (2002).

Here, the panel acknowledged that the district court relied on certain "statutory provisions[,] instead of its ancillary jurisdiction," in exercising jurisdiction over the proceedings below. *United States v. Mims*,

9

143 F.4th 1311, 1314-15 & n.4 (11th Cir. 2025). It also acknowledged that the parties asked that the Court decide whether "those" provisions provided a "statutory basis for the district court's jurisdiction." *Id.* at 1315 n.4. The panel nevertheless redirected the issues by ruling that ancillary jurisdiction would have existed. *Id.* And it justified this divergence in a footnote asserting that "we may 'affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below.'" *Id.* (quoting *PDVSA US Litig. Tr. v. LukOil Pan Ams. LLC*, 65 F.4th 556, 562 (11th Cir. 2023)). *See US Stem Cell Clinic*, 998 F.3d at 1311 (Jordan, J., concurring).

The problem with this reasoning is that the government never asserted any argument under the ancillary jurisdiction doctrine— whether in the proceedings below or on appeal. Given this additional fact, prior panels like that in *Henson* presumably would have ignored the doctrine "as a potential basis" for affirming the lower court's jurisdiction. *See* 261 F.3d at 1068. *See also Blab T.V. of Mobile*, 182 F.3d at 859; *Calderon*, 114 F.4th at 1208; *Young*, 980 F.3d at 821 n.4; *Reaves*, 872 F.3d at 1149 n.4; *Johnson*, 806 F.2d at, 1481 n.2.

10

## B. The panel decision also runs contrary to circuit and Supreme Court precedents imposing a necessity limitation on ancillary jurisdiction.

Ancillary jurisdiction is a "child of necessity." *McDonald v. Oliver*, 642 F.2d 169, 172 n.4 (5th Cir. 1981).[1] *Peacock v. Thomas*, 516 U.S. 349 (1996), confirms as much.

There, the Supreme Court held that a district court lacked ancillary jurisdiction over an action that the respondent, a judgment creditor, brought to "extend liability for payment" of his judgment from the judgment debtor to the debtor's corporate officer. *Id.* at 351-52, 356-60. This was so, it reasoned, because "[a]ncillary enforcement jurisdiction is, at its core, a creature of necessity." *Id.* at 359 (citing; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994); *Riggs v. Johnson Cnty.*, 73 U.S. 166, 187, *aff'd sub nom. U.S. ex rel. v. Council of Keokuk*, 73 U.S. 518 (1867)). The Federal Rules of Civil Procedure "provide fast and effective mechanisms for execution" on valid federal judgments. *Id.* And though they "cannot guarantee payment of every federal judgment,"

---

[1] Fifth Circuit decisions up to September 30, 1981—including *McDonald*—are binding on this Court. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

the district court's authority would have been "adequately preserved" and any exercise of its ancillary jurisdiction over the judgment creditor's payment action would not have been "justified" so "long as [the rules] protect[ed] [the] judgment creditor's ability to execute on [his] judgment." *Id.*

"These principles suggest that ancillary jurisdiction could not properly be exercised in this case." *See id.* at 358. The parties have never disputed that at least one provision of the Mandatory Victims Restitution Act ("MVRA") or the Federal Debt Collection Procedures Act of 1990 ("FDCPA") provided ground for the district court to enforce the restitution order against Ms. Mims. They merely disagree as to whether—after four years of the government's abdicating its statutory duty to collect unpaid restitution, *see* 18 U.S.C. § 3612(c), (DE 95; DE 96; DE 102)—enforcement now must occur through an independent civil proceeding, rather than Ms. Mims's closed criminal case. Thus, statutory law has "adequately preserved" the district court's restitution-enforcement authority. *See Peacock*, 516 U.S. at 359.

It also has protected the government's ability to execute on the restitution order. *See id.* The FDCPA, in particular, makes execution and

12

other "enforcement remedies available to the [the government] when it seeks to collect restitution." *U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1254 (11th Cir. 2020). The government already has utilized such remedies, including a writ of execution and a receivership sale, to satisfy a considerable portion of the restitution Ms. Mims owes. (DE 66; DE 67; DE 68; DE 69; DE 88; DE 90; DE 94; DE 100).

Importantly, the panel never "reach[ed] the parties' arguments about whether various provisions of the MVRA or FDCPA provided a statutory basis for the district court's jurisdiction." *Mims*, 143 F.4th at 1315 n.4. Having failed to do so, it could not have concluded that the district court's exercise of "ancillary enforcement jurisdiction" would have been "justified." *See Peacock*, 516 U.S. at 359. That is, there was no basis to establish any "necessity" for the court's ancillary jurisdiction. *See id.* at 359-60.

So the panel decision, on its face, is contrary to *Peacock*, as well as *McDonald*, 642 F.2d at 172 n.4.

13

### C. These issues warrant *en banc* consideration.

Generally speaking, federal courts routinely have regarded jurisdictional questions as sufficiently important to warrant review at the highest levels of appellate practice. *See, e.g.*, *United States v. Hohri*, 482 U.S. 64, 68 (1987); *Allapattah Servs., Inc. v. Exxon Corp.*, 362 F.3d 739, 753 (11th Cir. 2004) (Tjoflat, J., dissenting from denial of reh'g *en banc*) ("It is precisely because adherence to jurisdictional limitations is so important in maintaining the delicate balance of power among the various branches of the federal government that the Supreme Court frequently grants certiorari to resolve jurisdictional controversies.").

The specific jurisdictional issue here, given its nature, is particularly deserving of such attention. For starters, the ancillary jurisdiction doctrine is "the sire of confusion." *McDonald*, 642 F.2d at 172 n.4.

Compounding this problem, the panel raised the existence of ancillary jurisdiction during its own deliberation sometime after oral argument. So it decided the issue "without the critical assistance that focused briefing can provide," as Judge Jordan cautioned in *US Stem Cell Clinic*. *See* 998 F.3d at 1312 (Jordan, J., concurring). There is no

14

indication that the panel relied on any case where this Court applied the ancillary jurisdiction doctrine within the restitution context. Meanwhile, the panel did rely on "dicta" from *Kokkonen*. *Mims*, 143 F.4th at 1316. This, despite *Kokkonen*'s admonishment that "[i]t is to the holdings of our cases, rather than their dicta, that we must attend." 511 U.S. at 379. Given these circumstances, "[t]he risk that the [panel's] opinion will generate more confusion [about the ancillary jurisdiction doctrine] than clarity is inherent in [its] summary decisional process that d[id] not give the parties an opportunity to brief and argue the merits." *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 846 (2009) (Stevens, J., dissenting).

Moreover, the panel's "summary decisional process" "depriv[ed] [Ms. Mims] of the opportunity to be heard" on the ancillary jurisdiction doctrine's applicability. *See US Stem Cell Clinic*, 998 F.3d at 1312 (Jordan, J., concurring). It is therefore reasonably expected that the panel's opinion—which the Court has published and made binding on future panels—the opinion will welcome violations of future litigants due process rights.

Relatedly, the panel's decision undermines our adversarial system's "party presentation principle." The panel effectively advocated a position

15

that the government itself never espoused, thereby flouting the Court's "role of neutral arbiter of matters the parties present," *Greenlaw v. United States*, 554 U.S. 237, 243 (2008), in addition to usurping the government's "responsib[ility] [of] advancing the facts and argument entitling [it] to relief." *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020).

This concern is heightened by the fact that the district court has "limited jurisdiction" while the government—being the party that invoked the jurisdiction—carried any burden of establishing the existence of ancillary jurisdiction. *See Kokkonen*, 511 U.S. at 377. *See also Peacock*, 516 U.S. at 355 (holding that the respondent, who asserted jurisdiction, failed to carry his burden of demonstrating that ancillary jurisdiction existed).

For these reasons, the panel's jurisdictional decision is "worthy of *en banc* consideration." *See* 11th Cir. R. 40-3(h).

16

**II.    In deciding the due process issue, the panel seemingly overlooked or misapprehended critical points of law and fact, thereby warranting panel rehearing.**

First, in footnotes, the panel twice claimed that the district court did not modify Ms. Mims's restitution obligations but merely ordered that she "continue abiding by the original restitution order." *Mims*, 143 F.4th at 1315 n.5, 1317 n.7. The panel, however, noted that the original order directed "Mims to 'pay restitution at the rate of 10% of monthly gross earnings.'" *Id.* at 1313. It then admitted that the compliance order "ordered Mims to 'comply with the payment schedule listed in the Amended Judgment.'" *Id.* at 1314. This "includ[es] mak[ing] up for . . . [her] noncompliance since 2017." *Id.* (all but first alterations in original) (internal quotation marks omitted). The panel characterized this inclusion as an obligation to "resume the required monthly installments" in addition to finding a way to "pay the arrears for the past five years." *Id.* at 1317.

What's more, at the time of the compliance order, only fifteen years remained on the life of the original restitution order. *See* 18 U.S.C. § 3613(b). So a modification in fact occurred. It is no different than, for

17

example, a Chapter 13 bankruptcy case where a district court upheld the "modification" of a three- or five-year installment payment plan to require satisfaction of any "arrearage" that had accrued after the plan was confirmed. *See In re Hoggle*, 12 F.3d 1008, 1009 (11th Cir. 1994); *In re Nosek*, 544 F.3d 34, 44-45 (1st Cir. 2008).

The panel nonetheless claimed that Ms. Mims "received numerous opportunities to argue that she could not financially afford to . . . pay the arrears for the past five years." *Mims*, 143 F.4th at 1317. In the first instance, however, payment of arrears never arose before the compliance order's issuance. The government itself had only asked that Ms. Mims be ordered to "resume depositing the 10% of the gross earnings with the Clerk of the Court." (DE 110:7). Similarly, its proposed order stated that "Defendant shall commence to deposit 10% of monthly gross earnings." (DE 110-1:1). Thus, Ms. Mims did not have sufficient notice of the arrears issue.

The panel claimed that the district court provided Ms. Mims an "opportunity to notify the court of any changed financial circumstances by ordering her to submit a financial statement." *Mims*, 143 F.4th at 1318. But according to the record, the only "opportunity" was

18

contemporaneous with the issuance of the compliance order, which directed Ms. Mims to submit a Financial Statement of Debtor form. (DE 114:6). In other words, no opportunity preceded the problematic ruling.

Finally, the panel took exception to Ms. Mims's futility argument (district court could not entertain merits arguments because government failed to satisfy jurisdictional threshold). From the panel's perspective, "[a]lthough the district court was concerned that it did not have jurisdiction, the district court signaled that it agreed with the government on the merits of Mims's noncompliance." *Mims*, 143 F.4th at 1318.

Foremost, the district court was not merely "concerned" about the existence of jurisdiction. The court announced its "find[ing] at this time I have no jurisdiction to act." (DE 127:11-12).

That said, that the district court "signaled" agreement with the government "on the merits" is inconceivable. By explicating finding that it lacked jurisdiction, the court foreclosed itself from so much as "consider[ing] the merits of [the] case." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 369 (1981). The panel did not otherwise cite record evidence of the purported "signal." And the undersigned counsel has not found any.

19

## CONCLUSION

The Court should order rehearing *en banc* or panel rehearing.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*/s/ Ta'Ronce Stowes*
TA'RONCE STOWES
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1500
Miami, Florida 33130-1555
(305) 536-6900

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this petition complies with the type-volume limitation and typeface requirements of Fed. R. App. P. 40, because it contains 3,364 words, excluding the parts of the brief exempted by 11th Cir. R. 40-3(a), (b), (c), (d), and (j).

This petition also complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Century Schoolbook font.

*/s/ Ta'Ronce Stowes*
TARONCE STOWES

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 4th day of September, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and mailed four copies to the Clerk of the Court via third party commercial carrier for delivery within three days as soon as practicable. I also certify that the foregoing document is being served this day via CM/ECF on Amanda Perwin, Assistant United States Attorney and Daniel Matzkin, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*/s/ Ta'Ronce Stowes*
TA'RONCE STOWES

22

**APPENDIX A**

2025 WL 1934570
Only the Westlaw citation is currently available.
United States Court of Appeals, Eleventh Circuit.

UNITED STATES of America, Plaintiff-Appellee,

v.

Mikel MIMS, Defendant-Appellant.

No. 22-13215
|
Filed: 07/15/2025

**Synopsis**
**Background:** Defendant pleaded guilty to conspiracy to commit wire fraud and was sentenced to three years' probation and ordered to pay $255,620 in restitution. After defendant completed probation, she stopped paying restitution. The United States District Court for the Southern District of Florida, No. 1:14-cr-20210-MGC-1, Cecilia M. Altonaga, Chief Judge, granted government's motion to order defendant to renew her compliance with the restitution order. Defendant appealed, arguing that District Court no longer had jurisdiction to order compliance, and that even if it did, it violated her right to due process.

**Holdings:** The Court of Appeals, Branch, Circuit Judge, held that:

[1] as a matter of first impression, district court had ancillary jurisdiction to enter compliance order, and

[2] district court satisfied due process.

Affirmed.

**Procedural Posture(s):** Appellate Review; Sentencing or Penalty Phase Motion or Objection.

**West Headnotes (12)**

[1]    **Federal Courts**  ⚖  Jurisdiction

Appellate court reviews de novo subject matter jurisdiction of district court.

[2]    **Federal Courts**  ⚖  Limited jurisdiction; jurisdiction as dependent on constitution or statutes

Federal courts are courts of limited jurisdiction.

[3]    **Federal Courts**  ⚖  Limited jurisdiction; jurisdiction as dependent on constitution or statutes

Federal courts generally possess only that power authorized by the Constitution and statute.

[4]    **Federal Courts**  ⚖  Ancillary and incidental jurisdiction in general

A federal court may assert ancillary jurisdiction.

[5]    **Federal Courts**  ⚖  Ancillary and incidental jurisdiction in general

The "ancillary-jurisdiction doctrine" recognizes federal courts' jurisdiction over some matters, otherwise beyond their competence, that are incidental to other matters properly before them.

[6]    **Federal Courts**  ⚖  Ancillary and incidental jurisdiction in general

Ancillary-jurisdiction doctrine enables a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees; without jurisdiction to enforce a judgment entered by a federal court, judicial power would be incomplete and entirely inadequate to purposes for which it was conferred by the Constitution.

[7]    **Sentencing and Punishment**  ⚖  Proceedings to enforce

District court had ancillary jurisdiction to enter compliance order to enforce restitution order it had included in defendant's criminal sentence; district court lawfully entered restitution order as part of defendant's criminal judgment, defendant had not made her required monthly payments

toward her restitution obligations for years, by failing to make her required payments under restitution order, defendant violated her criminal sentence, district court had ancillary jurisdiction to enforce its own judgment, and district court did not divest itself of jurisdiction by closing defendant's criminal case, as closing case had no effect other than to remove case from court's active docket and permit transfer of associated records to an appropriate storage repository. 18 U.S.C.A. § 3663A(a)(1); Fed. R. Crim. P. 38(e)(2).

**[8]    Criminal Law** 🗝 Loss or divestiture of jurisdiction

Designating a criminal case "closed" does not prevent court from reactivating a case either of its own accord or at request of parties.

**[9]    Criminal Law** 🗝 Constitutional questions

Appellate court would review for plain error defendant's claim that trial court violated her right to due process, where defendant did not object to lack of due process below. U.S. Const. Amend. 5.

**[10]    Criminal Law** 🗝 Necessity of Objections in General

"Plain error" occurs when there is (1) error, (2) that is plain, and (3) that affects substantial rights, and if, but only if, these three requirements are met, then appellate court may exercise discretion to correct a forfeited error if (4) the error seriously affected fairness, integrity, or public reputation of judicial proceedings.

**[11]    Constitutional Law** 🗝 Restitution

**Sentencing and Punishment** 🗝 Proceedings to enforce

District court satisfied due process, as defendant received fair notice and opportunities to present her position before it ordered defendant to renew her compliance with restitution order;

defendant had notice that government sought her compliance with restitution order, she received numerous opportunities to argue that she could not financially afford to resume required monthly installments, court held a status conference concerning defendant's noncompliance with restitution order to afford her due process, notice, and an opportunity to defend, court allowed defendant an opportunity to respond to government's written motion for an order to enforce compliance, court gave defendant another opportunity to notify court of any changed financial circumstances by ordering her to submit a financial statement, and defendant failed to establish that any argument on the merits would have been futile. U.S. Const. Amend. 5.

**[12]    Criminal Law** 🗝 Motions

Before acting on its own initiative, a court must accord parties fair notice and an opportunity to present their positions.

Appeal from the United States District Court for the Southern District of Florida, D.C. Docket No. 1:14-cr-20210-MGC-1

**Attorneys and Law Firms**

Lisa Hirsch, Amanda Perwin, Lisa Tobin Rubio, U.S. Attorney Service - Southern District of Florida, U.S. Attorney Service - SFL, Miami, FL, for Plaintiff-Appellee.

Abigail Emily Becker, Michael Caruso, Ta'Ronce Stowes, Federal Public Defender's Office, Southern District of Florida, Miami, FL, for Defendant-Appellant.

Before Jill Pryor, Branch, and Grant, Circuit Judges.

**Opinion**

Branch, Circuit Judge:

**\*1** This appeal requires us to decide, as a matter of first impression, whether a district court continues to have jurisdiction in a criminal case to order compliance with unsatisfied restitution obligations after the defendant completes her probationary sentence.

In 2014, Mikel Mims pleaded guilty to one count of conspiracy to commit wire fraud. The district court sentenced her to three years' probation and ordered her to pay $255,620 in restitution. After Mims completed probation in 2017, she stopped paying restitution despite her remaining obligations. In 2022, the district court, within Mims's original criminal case, ordered Mims to renew her compliance with the district court's 2014 restitution order. Mims appeals the district court's 2022 order and argues that the district court no longer had jurisdiction in her original criminal case to order compliance. She also argues that, even if the district court had jurisdiction, the district court violated her right to due process when it entered the 2022 order.

District courts have the authority to enforce their own criminal sentences, and here the district court did so after giving Mims notice and opportunities to respond. Thus, after careful review, and with the benefit of oral argument, we affirm.

## I. Background

In 2014, a federal grand jury in the Southern District of Florida indicted Mims on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371 and four counts of wire fraud in violation of 18 U.S.C. § 1343. Mims pleaded guilty to one count of conspiracy to commit wire fraud. The district court sentenced her to three years' probation and ordered Mims to pay $255,620 in restitution. The district court ordered Mims to "pay restitution at the rate of 10% of monthly gross earnings, until such time as the court may alter that payment schedule in the interests of justice."

In 2017, Mims completed her term of probation and stopped paying restitution. According to the government, Mims paid only $58,232.93, or approximately 23%, of her restitution obligation while she was on probation.

Between March and August 2021, the government mailed Mims three forms requesting financial documentation. Mims did not respond to any of the government's requests. On September 24, 2021, the government moved for a hearing regarding Mims's failure to pay restitution. The next month, the district court held a Zoom hearing on the issue. Mims did not receive notice of the Zoom hearing and did not attend. The district court acknowledged that the hearing could not proceed without Mims because of "[d]ue process, notice, [and] opportunity to defend" concerns. The district court also

questioned whether it had jurisdiction in Mims's criminal case after Mims's term of probation ended.

In November 2021, Mims (represented by counsel) and the government attended a status conference about Mims's failure to pay restitution. At the conference, Mims argued that the district court lacked jurisdiction to enforce the restitution order in her criminal case because her term of probation had ended. According to Mims, the government had to initiate separate civil proceedings to enforce the restitution order. In response, the government argued that the district court had jurisdiction to enforce the restitution order in the criminal case under 18 U.S.C. § 3613A, the default provision of the Mandatory Victims Restitution Act ("MVRA"). [1]

**\*2**  The district court again expressed doubt as to whether it had jurisdiction in Mims's criminal case, and it directed the government to file a written motion for an order to enforce compliance with the restitution order that set forth exactly what the government was asking the court to do and the jurisdictional basis for such action.

Following the government's motion and a response by Mims, the district court granted the government's motion and ordered Mims to renew her compliance with the restitution order ("the compliance order"). [2] Citing various provisions of the MVRA and the Federal Debt Collection Procedures Act of 1990 ("FDCPA"), [3] the district court concluded that it had "jurisdiction to enforce restitution in the underlying criminal case." Accordingly, the district court ordered Mims to "comply with the payment schedule listed in the Amended Judgment," including "mak[ing] up for ... [her] noncompliance" since 2017, and "fill out and submit the Financial Statement of Debtor form." Mims timely appealed.

## II. Discussion

On appeal, Mims contends (1) that the district court lacked jurisdiction to enter the compliance order, [4] and (2) that even if the district court had jurisdiction, it violated Mims's right to due process when it entered the compliance order. We take each of these issues in turn.

### A. The district court had jurisdiction to enter the compliance order

**[1]**    **[2]**    **[3]** "We review de novo the subject matter of the order of dismissal." *511 U.S. at 381, 114 S.Ct. 1673.* jurisdiction of the district court." *United States v. Benjamin, 958 F.3d 1124, 1133 (11th Cir. 2020).* "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).* Thus, federal courts generally "possess only that power authorized by the Constitution and statute." *United States v. Rivera, 613 F.3d 1046, 1049 (11th Cir. 2010)* (alteration adopted) (quoting *Kokkonen, 511 U.S. at 377, 114 S.Ct. 1673*). The Constitution provides, in relevant part, that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under ... the Laws of the United States ...." *U.S. Const. art. III, § 2, cl. 1.* And as authorized by Congress, federal district courts "have original jurisdiction ... of all offenses against the laws of the United States." *18 U.S.C. § 3231.* For certain offenses, once a defendant is convicted, the district court must order "that the defendant make restitution to the victim of the offense." *Id.* § 3663A(a)(1). Thus, as Mims concedes, the district court had jurisdiction over her underlying criminal offense and lawfully ordered her to pay restitution in the restitution order.

**\*3** **[4]**    **[5]**    **[6]** A federal court may also assert "ancillary jurisdiction." *Kokkonen, 511 U.S. at 378, 114 S.Ct. 1673.* The ancillary-jurisdiction doctrine "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* This doctrine "enable[s] a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id. at 379–80, 114 S.Ct. 1673; see also United States v. Batmasian, 66 F.4th 1278, 1281 (11th Cir. 2023)* (discussing ancillary jurisdiction). Indeed, "[w]ithout jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Peacock v. Thomas, 516 U.S. 349, 356, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996)* (quotation omitted). Accordingly, we have historically recognized that district courts have "inherent power to enforce compliance with their lawful orders through civil contempt." *Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991).* [5]

Though in *Kokkonen* the Supreme Court ultimately found a lack of ancillary jurisdiction when a district court tried to enforce a settlement agreement after it dismissed the underlying lawsuit, the Court stated in dicta that the "situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part

In that circumstance, the Court explained that "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.*

**[7]** Here, the district court lawfully entered the restitution order as part of Mims's criminal judgment. *See 18 U.S.C. § 3663A(a)(1).* Mims does not contest the lawfulness of the restitution order. Nevertheless, according to the government, Mims has not made her required monthly payments towards her restitution obligations since 2017. Mims concedes that she was not in compliance with the restitution order when the district court issued the compliance order. By failing to make her required payments under the restitution order, Mims violated her criminal sentence. And as we have explained, district courts have ancillary jurisdiction to enforce their own judgments. *See Kokkonen, 511 U.S. at 380–81, 114 S.Ct. 1673; see also Fed. R. Crim. P. 38(e)(2).* Accordingly, we conclude that the district court had ancillary jurisdiction to enforce the restitution order it had included in Mims's criminal sentence via the compliance order.

**\*4** Our conclusion comports with other analogous cases. For example, we have held that district courts can exercise equitable jurisdiction over defendants' postjudgment civil motions for the return of property seized by the government in criminal cases. *See United States v. Potes Ramirez, 260 F.3d 1310, 1314–15 (11th Cir. 2001); United States v. Martinez, 241 F.3d 1329, 1330 (11th Cir. 2001).* In both *Potes Ramirez* and *Martinez*, the defendants moved under *Federal Rule of Criminal Procedure 41(e)*, within their underlying criminal cases, years after the district courts entered final judgments. *See Potes Ramirez, 260 F.3d at 1312; Martinez, 241 F.3d at 1329.* We did not require either district court to open a new civil docket to entertain the defendants' motions even though we deemed the motions "civil proceeding[s]." *Potes Ramirez, 260 F.3d at 1313–14 & n.5.* Instead, these cases illustrate district courts' power to entertain certain motions, including "civil" motions, within an existing criminal docket after criminal proceedings end.

**[8]** Mims resists our conclusion, arguing that the district court's previous closure of her criminal case had some jurisdictional effect. But closing a case "has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository." [6] *Fla. Ass'n for Retarded Citizens, Inc. v. Bush, 246 F.3d 1296, 1298 (11th Cir. 2001)*

(quotation omitted). "Designating a case 'closed' does not prevent the court from reactivating a case either of its own accord or at the request of the parties." *Id.* Accordingly, the district court did not divest itself of jurisdiction by closing Mims's criminal case.

### *B. The district court did not violate Mims's right to due process*

Next, Mims argues that even if the district court had jurisdiction to enter the compliance order, the district court "violat[ed] ... Ms. Mims's right to due process and an opportunity to be heard" when it entered the compliance order. In particular, Mims argues that she was not offered an opportunity to explain her opposition to the renewal of her restitution payments plus "arrears that have accrued since 2017." [7]

**[9]   [10]**   Because Mims did not object to lack of due process below, we review for plain error. [8] *See United States v. Moore*, 22 F.4th 1258, 1270 (11th Cir. 2022); *United States v. McNair*, 605 F.3d 1152, 1222 (11th Cir. 2010). Plain error occurs when there is "(1) error, (2) that is plain, and (3) that affects substantial rights." *McNair*, 605 F.3d at 1222 (quotation omitted). If, but only if, these three requirements are met, then "we may exercise discretion to correct a forfeited error ... if (4) the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

**\*5   [11]   [12]**   The district court did not commit plain error by issuing the compliance order. "Before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) (alteration adopted) (quoting *Day v. McDonough*, 547 U.S. 198, 210, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006)). Mims had notice that the government sought her compliance with the restitution order, and she received numerous opportunities to argue that she could not financially afford to resume the required monthly installments and pay the arrears for the past five years. For instance, before her hearings, the government sent Mims three forms in which she could have informed the government of changed financial circumstances that affected her ability to repay the debt. [9] The district court held a status conference concerning Mims's noncompliance with the restitution order to afford Mims "[d]ue process, notice, [and an] opportunity to defend." Mims and her counsel attended the status conference wherein the district court agreed with the government that Mims was failing to comply with the restitution order. And the

district court requested a written motion from the government that detailed what remedy the government sought as well as the authority for said remedy and allowed Mims an opportunity to respond.

Each time, Mims rejected her opportunity to be heard on her compliance with the restitution order or her ability to repay the debt: she either did not respond (as with the government's three requests for financial information) or used her opportunity merely to contest the district court's jurisdiction (as with the hearing and written briefing). Moreover, the district court gave Mims another opportunity to notify the court of any changed financial circumstances by ordering her to submit a financial statement. Accordingly, Mims received "fair notice and an opportunity to present [her] position[ ]." *Smith*, 30 F.4th at 1338 (quotation omitted).

In opposition to this conclusion, Mims contends that she did not have a meaningful opportunity to justify her noncompliance with the restitution order because the government failed to establish jurisdiction; thus, any argument on the merits would have been "futile." We disagree. Although the district court was concerned that it did not have jurisdiction, the district court signaled that it agreed with the government on the merits of Mims's noncompliance, and it gave Mims an opportunity to respond in writing to the government's motion on the merits. Mims did not address her noncompliance at the status conference. The government's motion addressed the merits of Mims's noncompliance; Mims's response did not. Thus, because Mims was afforded several opportunities to be heard, we find no plain error. *See United States v. Pacheco-Romero*, 995 F.3d 948, 958 (11th Cir. 2021) (rejecting a due process argument where the "appellants received sufficient notice and several opportunities to be heard" before the district court entered judgment).

### III. Conclusion

**\*6**   Mims has not complied with the district court's restitution order in her criminal case since 2017. For the above reasons, we conclude that the district court had inherent authority to reorder Mims's compliance with its restitution order even though she had completed her term of probation. And the district court offered Mims opportunities to be heard before it reordered compliance, which satisfied due process. Accordingly, we affirm.

**AFFIRMED.**

**All Citations**

--- F.4th ----, 2025 WL 1934570

---

## Footnotes

1   Section 3613A states that once a defendant defaults on her restitution,

> the court may, pursuant to section 3565, revoke probation or a term of supervised release, modify the terms or conditions of probation or a term of supervised release, resentence a defendant pursuant to section 3614, ... enter or adjust a payment schedule, or take any other action necessary to obtain compliance with the order of a fine or restitution.

> 18 U.S.C. § 3613A(a)(1). Section 3565 permits a court to continue, modify, or revoke a defendant's probation when "the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation." *Id.* § 3565(a).

2   The compliance order was signed by a different district judge "[o]n behalf of" the district judge who held the Zoom hearing and status conference.

3   The FDCPA "provides the exclusive civil procedures ... to recover a judgment" on restitution in a criminal case. 28 U.S.C. §§ 3001(a)(1), 3002(3)(B), 3003(b)(2).

4   Ultimately, we conclude that the district court had ancillary jurisdiction to issue the compliance order. Thus, we do not reach the parties' arguments about whether various provisions of the MVRA or FDCPA provided a statutory basis for the district court's jurisdiction. And although the district court relied on some of those statutory provisions instead of its ancillary jurisdiction, we "may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *PDVSA US Litig. Tr. v. LukOil Pan Ams. LLC,* 65 F.4th 556, 562 (11th Cir.) (quotation omitted), *cert. denied,* ––– U.S. ––––, 144 S. Ct. 343, 217 L.Ed.2d 183 (2023).

5   We have also held that a "district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Puentes,* 803 F.3d 597, 606 (11th Cir. 2015). But no such modification occurred here. Mims argues that the compliance order improperly modified the restitution order by adding "arrears that have accrued since 2017," but she is wrong. Although the compliance order states that Mims must "make up for the past five years of noncompliance with the" restitution order, the district court did not order any further monetary penalties or "alter[ ] the amount of restitution [Mims] is required to pay." *Puentes,* 803 F.3d at 605. Thus, the compliance order did not "modify" Mims's restitution obligations; it merely ordered Mims to continue abiding by the original restitution order.

But in any event, the Federal Rules of Criminal Procedure expressly authorize district courts to enforce their restitution orders via

> *any order reasonably necessary to ensure compliance with a restitution order* or a notice order after disposition of an appeal, including: (A) a restraining order; (B) an injunction; (C) an order requiring the defendant to deposit all or part of any monetary restitution into the district court's registry; or (D) an order requiring the defendant to post a bond.

Fed. R. Crim. P. 38(e)(2) (emphasis added). Thus, we have no trouble concluding that the compliance order was "authorized by a ... rule." *Puentes*, 803 F.3d at 606.

6    We note, however, that Rule 41 voluntary dismissals granted without conditions raise separate issues that we need not address here because Mims's restitution terms were incorporated into her criminal sentence. *See* *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1265 (11th Cir. 2021).

7    As we explained previously, the district court did not modify the restitution order. Therefore, to the extent that Mims's due process argument hinges on the alleged modification of the restitution order, it necessarily fails.

8    On appeal, Mims also argues that to the extent the government sought any remedies under the FDCPA below, the government and district court did not comply with the FDCPA's procedural requirements. We do not reach this argument because we conclude, as discussed, that the district court was proceeding under its inherent authority with ancillary jurisdiction, not proceeding under the FDCPA.

9    Mims asserts that the government's three requests for financial information are "irrelevant" because they are "extrajudicial correspondence solely from one party to another." But the requests do not solely implicate the parties. Mims had an obligation to notify the government *and* the court of any material change in her financial circumstances, and she still has the opportunity to do so (*i.e.*, be heard) if she cannot comply with the original payment schedule. Section 3664(k) of Title 18 of the United States Code outlines this process:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

---

**End of Document**                                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    7